# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven William Dyer, | No. CV 17-01528-PHX-JJT (DMF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

**TO THE HONORABLE JOHN J. TUCHI, UNITED STATES DISTRICT JUDGE:**

Steven William Dyer ("Petitioner" or "Dyer") filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on May 19, 2017, in which he challenges his convictions in the Maricopa County Superior Court. (Doc. 1 at 1)[1] Respondents filed their Response on October 5, 2017 (Doc. 12), and Petitioner subsequently filed his Reply on February 6, 2018 (Doc. 22). As is explained below, the Court recommends that Dyer's Petition be denied and dismissed with prejudice.

## I.   BACKGROUND

### A.   Petitioner's indictment, trial, sentencing, and appeals

Petitioner was indicted in the Maricopa County Superior Court on January 25, 2001, on thirteen counts, comprised of one count of public sexual indecency to a minor and twelve counts of sexual conduct with a minor. (Doc. 12-1 at 55-60) The alleged acts

---

[1] Citations to the record indicate documents as displayed in the official electronic document filing system maintained by the District of Arizona.

supporting the counts were said to have occurred at various times between January 1, 1999, and January 14, 2001. (*Id.*) The victim was between the ages of 11 and 13 when the indicted acts were alleged to have occurred. (Doc. 12-4 at 82)

On February 25, 2002, a bond forfeiture hearing was conducted, in which Petitioner's counsel stated he was not aware of Petitioner's whereabouts, and Petitioner's $100,000.00 bond was forfeited. (Doc. 12-1 at 66) Petitioner was not present throughout his jury trial, which occurred in March and April 2002. (Doc. 12-9 at 69-161, Doc. 12-10, Doc. 12-11, Doc. 12-12, Doc. 12-13, Doc. 12-14 at 1-201) The jury was instructed not to speculate on or consider Petitioner's absence from the courtroom at trial. (Doc. 12-14 at 172) The jury found Petitioner guilty on all charged accounts in April 2002. (*Id.* at 191-196) Petitioner was "finally located in Canada approximately ten years later." (Doc. 12 at 6, Doc. 12-14 at 212) After he was again in custody, Petitioner was sentenced on April 27, 2012 to presumptive terms of 20 years each for counts 3 through 13, which Arizona law requires to run consecutively, as the sentencing court noted. (Doc. 12-14 at 214-215)

On direct appeal of his trial, convictions and sentences, Petitioner timely raised through counsel five claims for review: (1) he was prejudiced by the trial court's error in denying pretrial disclosure of the victim's medical, mental health, and school records; (2) the trial court had tainted the jury pool by "providing prejudicial information about [Petitioner's] absence from the courtroom;" (3) in closing arguments, the prosecutor suggested that [Petitioner] bore the burden of proving his innocence; (4) Petitioner's constitutional right to confrontation was violated when the trial court admitted hearsay statements at a Rule 404(c) hearing; and (5) Petitioner's sentence violated federal and state constitutional protections from cruel and unusual punishment. (Doc. 12-2 at 25-67) In its thorough memorandum decision, the Arizona Court of Appeals found no error by the trial court on any of Petitioner's claims, and held there was no prosecutorial misconduct. (*Id.*)

Petitioner's counsel filed a petition for review with the Arizona Supreme Court. (Doc. 12-5 at 99-114) Respondents filed a notice of acknowledgment with the supreme court, relying on their briefing at the Arizona Court of Appeals and therefore declining to

file a response. (Doc. 12-7 at 2) The Arizona Supreme Court summarily denied Petitioner's petition for review (*Id.* at 6), and the court of appeals later issued its mandate (*Id.* at 8).

Petitioner timely filed a notice of post-conviction relief ("PCR") on November 10, 2014. (*Id.* at 26-30) Represented by a public defender, Dyer filed a petition for PCR in May 2015. (*Id.* at 32-55) Petitioner argued: (1) that trial counsel provided ineffective assistance of counsel ("IAC") by failing to adequately advise him about a plea offer; and (2) that he was entitled to an additional credit for time served. (*Id.*) The court conducted an evidentiary hearing on Petitioner's plea offer claim. (*Id.* at 84-86, 88-89) Petitioner's trial counsel and the prosecutor testified. (*Id.*) After defense counsel and the county attorney simultaneously filed closing argument memoranda (*Id.* at 94-119), the superior court issued an order dismissing Petitioner's claim of IAC, but granted relief on his claim for additional days of presentence incarceration credit (*Id.* at 121-126).

Thereafter, Petitioner's appointed PCR counsel notified the superior court that she had concluded there was insufficient basis for asserting further pleadings, and she requested an extension of time for Petitioner to file a *pro per* petition for review. (*Id.* at 128-129) The court allowed Petitioner an additional month during which to file his PCR petition. (*Id.* at 131) However, on the date his *pro per* petition was due, Dyer filed a motion for continuance with the superior court, rather than filing a petition, and requested copies of documents that he had not yet received. (*Id.* at 133-144) It appears that Petitioner filed the identical document also with the Arizona Court of Appeals. (Doc. 12-8 at 2-13)      The court of appeals construed Petitioner's motion to continue as a motion to extend time to file and gave Petitioner up to and including April 4, 2016 to file a compliant petition for review. (*Id.* at 41) On March 24, 2016, Petitioner filed a notice of appeal in the superior court, in which he requested appointment of counsel, and discussed the preparation of the post-conviction record, and also appeared to anticipate the need for additional time to prepare his *pro per* PCR petition. (*Id.* at 46-53) He filed the identical document with the court of appeals on the same day. (*Id.* at 75-82)

The superior court filed an April 5, 2016 minute entry, concluding that Petitioner's March 24, 2016 "notice of appeal" was intended to be part of the record on appeal and that it was filed for "copying purposes, rather than the seeking of affirmative relief." (*Id.* at 84) On April 7, 2016, the superior court filed an order denying as moot Petitioner's request for an extension of time until June 27, 2016, to file his *pro per* PCR petition. (*Id.* at 86) The court concluded good cause was lacking to support the request, and that in any event, the court of appeals had already granted Petitioner until April 4, 2016 to file a compliant petition. (*Id.*) Also on April 7, 2016, Petitioner's advisory counsel in the PCR action filed a notice in the superior court, informing the court that Petitioner had intended to request transcripts of his evidentiary hearings dated November 13 and 20, 2015. (*Id.* at 91)

On June 20, 2017, the Arizona Court of Appeals filed an order denying review of Dyer's petition for review of the superior court's dismissal of his petition for PCR. (*Id.* at 105-106) The court of appeals denied review because it determined that Petitioner had failed to file a petition that was compliant with Rule 32.9, Arizona Rules of Criminal Procedure. (*Id.* at 105) The court of appeals noted that it had allowed Petitioner until April 4, 2016, to file a compliant PCR petition. The court then explained:

> Dyer, however, again filed a "notice of appeal" that did not substantially comply with Rule 32.9. Instead, he continued to insist counsel be appointed, despite his having been represented by counsel who declined to file a petition for review having found no meritorious claim to raise. *Cf.* Ariz. R. Crim. P. 32.4(c)(2); *Montgomery v. Sheldon*, 181 Ariz. 256, 260, 889 P.2d 614, 618 (1995) (when appointed counsel unable to find claims to raise in Rule 32 petition, counsel may ask that petitioner be permitted to file pro se petition), *superseded by statute on other grounds as recognized by State v. Smith*, 184 Ariz. 456, 459, 910 P.2d 1, 4 (1996). Although this court granted an extension of time in which to file a petition for review that complies with Rule 32.9, and more than a year has passed since that petition was due, Dyer has failed to file one.

(*Id.* at 106) Respondents have filed copies of the state courts' dockets indicating that Petitioner did not seek review of the Arizona Court of Appeals' June 20, 2017, memorandum decision. (Doc. 12-1 at 5, 40, 53) As noted, Dyer filed his Petition in this

- 4 -

Court on May 19, 2017. (Doc. 1 at 1)

### B.    Petitioner's habeas claims

In his Petition, Dyer asserts six grounds for relief. (Doc. 1 at 6-11) Respondents identify and address two subparts in each of Grounds 1, 2 and 6, recognizing that in his Petition, read liberally, Dyer potentially raised two separate claims under each of these grounds for relief. (Doc. 12 at 15-16) In his reply, Petitioner states that he did not intend for the issues considered by the Respondents as Grounds 1(b) and 6(b) to be separate grounds for relief, but rather "supporting evidence" for Grounds 1 and 6, respectively. (Doc. 22 at 35, 41). Similarly, Petitioner explains that "Ground 2(b) addresses the same legal question as [Ground] 2(a)[,]" and that "[Ground] 2(b) merely compounds the damage in support of the violation of [Petitioner's] right to an impartial jury, fair trial, and due process." (*Id.* at 17) Nevertheless, Petitioner does not expressly disavow his intention to raise the issue underlying Ground 2(b). Because Petitioner disavows raising Grounds 1(b) and 6(b) as separate grounds for relief, and because the undersigned agrees with Respondents that Ground 1(b) would not be cognizable in habeas and that Ground 6(b) was never fairly presented to the state courts, these issues will not be considered further.

Under Ground 1, Petitioner argues his rights under the Sixth Amendment Confrontation Clause and his rights to due process under the Fifth and Fourteenth Amendments were violated by the trial court's decision, after a pretrial hearing based on Arizona Rule of Evidence 404(c)[2], to allow testimony of G.S., a key witness against

_____

[2] Rule 404(c) of the Arizona Rules of evidence addresses (c) Character evidence in sexual misconduct cases, and provides, in part:

> In a criminal case in which a defendant is charged with having committed a sexual offense, or a civil case in which a claim is predicated on a party's alleged commission of a sexual offense, evidence of other crimes, wrongs, or acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged. In such a case, evidence to rebut the proof of other crimes, wrongs, or acts, or an inference therefrom, may also be admitted.

Petitioner. (Doc. 1 at 6)

Ground 2(a) asserts that Petitioner's fair trial rights were violated by the trial judge's statements responding to jury pool comments about Petitioner's absence. (*Id.* at 7) In Ground 2(b), Petitioner argues the prosecutor committed misconduct by remarking on Petitioner's absence with the jury present. (*Id.*)

In Ground 3, the Petitioner contends that prosecutorial misconduct during closing argument resulted in violation of his federal rights to due process. (*Id.* at 8)

Ground 4 asserts that Petitioner's sentence resulted in unconstitutional punishment. (*Id.* at 9)

In Ground 5, Petitioner asserts a violation of his rights to due process under the Fifth and Fourteenth Amendments when the trial court denied a motion to compel disclosure of the victim's medical and mental health records for an in camera review. (*Id.* at 10)

Under Ground 6, Petitioner argues his trial counsel provided ineffective assistance by not discussing with Petitioner an initial plea offer in March 2001. (*Id.* at 11)

## II.    LEGAL FRAMEWORK

### A.    Exhaustion and procedural default

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting federal claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). In Arizona, there are two primary procedurally appropriate avenues in state court for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. Rule 32 of the Arizona

Rule 404(c), Ariz. R. Evid.

Rules of Criminal Procedure governs PCR proceedings and provides that a petitioner is precluded from relief on any claim that could have been raised on direct appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.2(a)(3). The preclusive effect of Rule 32.2(a) may be avoided only if a claim falls within certain exceptions set forth in subsections (d) through (h) of the rule. *See* Ariz. R. Crim. P. 32.1(d)-(h), 32.2(b), 32.4(a).

In addition to being raised in the proper forum, a petitioner's claims must be "fairly presented." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In other words, a petitioner must provide the state court "with an opportunity to apply controlling legal principles to the facts bearing upon his [federal] constitutional claim." *Picard v. Connor*, 404 U.S. 270, 277 (1971) (citation and internal quotation marks omitted). To be fairly presented, a claim must include a statement of the operative facts and the specific federal legal theory. *Baldwin*, 541 U.S. at 32-33; *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996); *Duncan*, 513 U.S. at 365-66; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) ("The mere similarity between a claim of state and federal error is insufficient to establish exhaustion.").

A habeas claim may also be precluded from federal review when it is subject to an express or implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). An express procedural bar exists if the state court has denied or dismissed a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule). An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally

defaulted. *Coleman,* 501 U.S. at 732, 735 n. 1; *Netherland,* 518 U.S. at 161–62.

### B.    Cause and prejudice, or miscarriage of justice

This Court may review a procedurally defaulted claim if the petitioner can demonstrate either: (1) cause for the default and actual prejudice to excuse the default; or (2) a miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). To establish "cause," a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray*, 477 U.S. at 488-89). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170; *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala*, 195 F.3d at 1105 n.6; *Cook*, 538 F.3d at 1028 n.13.

The miscarriage of justice exception to procedural default "is limited to those *extraordinary* cases where the petitioner asserts his [actual] innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008) (emphasis in original). To pass through the actual innocence/*Schlup* gateway, a petitioner must establish his or her factual innocence of the crime and not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003). To prove a "fundamental miscarriage of justice," a prisoner must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.

/ / /

### C.    Ineffective Assistance of Counsel

Under clearly established Federal law on ineffective assistance of counsel ("IAC"), a petitioner must show that his trial counsel's performance was both (a) objectively deficient and (b) caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (explaining that in a 28 U.S.C. § 2254 case, deference is due both to defense counsel's performance and to the state court's ruling). The Court has discretion to determine which *Strickland* prong to apply first. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998). A habeas court reviewing a claim of ineffective assistance of counsel must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations omitted).

### D.    28 U.S.C. § 2254 Habeas Petition – Legal Standard of Review

On habeas review, this Court can only grant relief if the petitioner demonstrates prejudice because the adjudication of a claim in state court proceedings either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "'highly deferential standard for evaluating state court rulings' which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). This determination is based on review of the "last reasoned decision" of the state court. *Towery v. Ryan*, 673 F.3d 933, 944 (9th Cir. 2012) (citation omitted).

/ / /

## III.   DISCUSSION

### A.   Ground 1: Applicability of the Confrontation Clause to a pretrial evidentiary hearing.

In Ground 1, Petitioner argues:

The trial court held a pre-trial hearing to decide whether to admit the testimony of a key witness [G.S.] under [R]ule 404(c), Arizona Rules of Evidence. Although there was no evidence that [G.S.] was unavailable, the State did not call him as a witness. Instead, it introduced a videotaped interview of [G.S.] by a police detective. Petitioner's counsel objected based on confrontation rights under both the U.S. and Arizona constitutions. The trial court admitted the hearsay without the benefit of cross-examination. The petitioner was harmed in this case, because the videotaped testimony related to uncharged crimes and an attempt to corroborate claims of the victim, whose credibility was questionable, as the prosecutor conceded. It had a significant impact on early evaluations of the case, including positions with regard to plea discussions.

(Doc. 1 at 6) Petitioner urges this as a violation of his constitutional right under the Sixth Amendment as applied to the states under the Fourteenth Amendment. (*Id.*) Petitioner argued this issue to the Arizona Court of Appeals on direct appeal. (Doc. 12-5 at 92-94)

In its memorandum decision, the court of appeals noted that the trial court had viewed the videotape and ultimately found the other act evidence admissible under Rule 404(c). (*Id.* at 92)[3] The court of appeals found no error. (*Id.*) Citing state case law and rules of evidence, the court instructed that evidentiary rules do not apply to decisions on preliminary questions of admissibility of evidence. (*Id.*) Further, the court stated that the right to confrontation is a trial right, citing several U.S. Supreme Court opinions. (*Id.*) The court opined that although Petitioner had argued the pretrial hearing was "such a critical stage of the proceeding" that his ability to confront G.S. at trial was insufficient to protect his confrontation right, the "'appropriate question is whether there has been any

---

[3] The appellate court's stated facts are entitled to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (per curiam) ("In habeas proceedings in federal court, the factual findings of state courts are presumed to be correct."); *Runningeagle v. Ryan*, 686 F.3d 758, 763, n.1 (9th Cir. 2012) (rejecting argument that the statement of facts in an Arizona Supreme Court opinion should not be afforded the presumption of correctness).

interference with the defendant's opportunity for effective cross-examination.'" (*Id.* at 93 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 744, n. 17 (1987)) The Arizona Court of Appeals indicated that it was not necessary to require G.S. to appear at the pretrial hearing, because Petitioner had been able to interview G.S. prior to the pretrial hearing, and the court had placed no limits on Petitioner's cross-examination of G.S. at trial, permitting Petitioner to "conduct a full and effective cross-examination of G.S. at trial." (*Id.*)

Respondents contend that Petitioner does not argue that the court of appeals' decision is "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by Supreme Court of the United States." (Doc. 12 at 34) Moreover, Respondents assert that the Supreme Court has yet to address the applicability of the Confrontation Clause to pretrial hearings. (*Id.* at 35)

In his Reply, Petitioner argues for the first time that the defect in the state court's adjudication of his claim was not necessarily under section 2254(d)(1), that is, a decision that was "contrary to, or involved an unreasonable application, clearly established Federal law as determined by the Supreme Court of the United States[,]" but rather, that the error arose from the trial court's "unreasonable determination of the facts at the 404(c) hearing based on testimonial hearsay" under section 2254(d)(2). (Doc. 22 at 2) Petitioner contends that the trial court "allow[ed] the jury to hear 'evidence' of uncharged acts at trial that should have been excluded." (*Id.*) To demonstrate a state court adjudication falls within the ambit of section 2254(d)(2), a petitioner must show the state court decision relied on a finding of fact that is "objectively unreasonable." *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004) (citation omitted).

Petitioner complains that G.S. was not required to appear at the pretrial evidentiary hearing, and Petitioner was therefore unable to confront and cross-examine G.S. for the purposes of that hearing. (Doc. 22 at 3-4) Petitioner speculates that if he had been able to cross-examine G.S. at the Rule 404(c) hearing, G.S. would not have been allowed to testify at trial because of a risk of prejudice and jury confusion, considerations that would

have outweighed the probative value of the testimony. (*Id.* at 4) Petitioner further argues that had the trial court required G.S. to appear and undergo cross-examination, rather than relying on the police interview videotape: (1) G.S.'s testimony would have demonstrated he had a motive to accuse Petitioner; and (2) G.S.'s testimony may have provided reasons to doubt the veracity of such testimony, including deficits in memory and perception, and outright inconsistencies, which Petitioner stated "became evident at trial." (*Id.* at 6-7) Petitioner suggests that G.S.'s "testimony at trial during cross-examination was just as elusive, which showed that it really shouldn't have been admitted." (*Id.* at 7) Petitioner asserts that at trial, G.S. was cross-examined on potential inconsistencies in prior statements made to investigators, and that he answered "I don't remember" at least 23 times. (*Id.* at 7-8) The end result of G.S.'s trial testimony, according to Petitioner, was jury confusion of the issues and prejudice to him. (*Id.* at 8) Petitioner contends that the issues accompanying G.S.'s trial testimony should have been identified by making G.S. appear at the pre-trial evidentiary hearing. (*Id.*)

Petitioner's arguments are founded on the trial court's application of evidentiary rules to allow G.S. to testify as to other act evidence at trial even though Petitioner was not permitted to cross-examine G.S. at the pretrial hearing, rather than on the trial court's determination of the facts. The Arizona Court of Appeals decided that Petitioner's confrontation rights were sufficiently protected because he was allowed unlimited cross-examination of G.S. at trial, and he had been permitted to interview G.S. before the pretrial hearing.

The undersigned concludes that the United States Supreme Court has not addressed whether the Confrontation Clause applies in pretrial hearings. *See* Christine Holst, *The Confrontation Clause and Pretrial Hearings: A Due Process* Solution, 2010 U. Ill. L. Rev. 1599, 1613 (2010) ('the Supreme Court has not directly addressed whether the Confrontation Clause applies to pretrial hearings[.]"). Very recently, the Supreme Court denied a petition for writ of certiorari in *Zamzow v. Wisconsin*, 138 S. Ct. 501 (2017), a case in which the Supreme Court of Wisconsin found that "the Supreme Court

has signaled that the right to confrontation persists as a trial protection and does not apply during pretrial proceedings." *State v. Zamzow*, 374 Wis. 2d 220, 242, 892 N.W.2d 637, 649 (Wis. 2017).

Petitioner has not shown that the court of appeals' decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

**B.      Ground 2(a): The right to impartial jury and fair trial – trial court's comments**

Petitioner asserts the trial court's statements in response to questions from the jury panel about Petitioner's absence violated his Sixth Amendment rights to a fair and impartial jury. (Doc. 1 at 7) Petitioner raised this issue on direct appeal to the Arizona Court of Appeals. (Doc. 12-2 at 31-38) The court of appeals set forth the salient facts underlying this issue as follows:

> During *voir dire*, a prospective juror questioned Dyer's absence and expressed his belief it would be in Dyer's best interest to be present for trial. The prospective juror then asked if the panel would receive more information regarding why Dyer was absent. The court responded: "[N]o, you're not going to be hearing anything about that. I'm just telling you that he is aware that the matter is proceeding to trial. He is aware that he has a right to be here, and he is not going to be here. His interests are being represented at trial by his attorneys. And other than saying that, and that the jurors are not going to be allowed to consider that factor in determining whether the State has proven his guilt. I'm going to leave it at that." When the prospective juror commented that it seemed out of character for an innocent person to not come to court, the court responded; "[S]ometimes there are things that we just can't explain to you or tell you about, but suffice it to say that if you are a member of the jury panel, having heard the evidence, you'll be deliberating on the evidence that's before you and you won't get to consider that factor that the defendant was not present during the trial." When another prospective juror in turn asked if Dyer was incarcerated or not, the trial court responded that Dyer was not incarcerated. While the trial court made other comments during voir dire regarding Dyer's absence, on appeal, Dyer only takes issue with the comments identified

above.

(Doc. 12-5 at 88) The court of appeals found no error, concluding the trial court's responses to potential jurors' questions were appropriate, did not "portray Dyer in a negative light[,]" did not "comment on matters not in evidence, express any opinions, display any bias or partiality, or interfere with the jury's independent evaluation of the evidence." (*Id.*) The court of appeals further concluded that the trial court properly advised the jury panel they would not be allowed to draw any inference one way or the other from Petitioner's absence, and emphasized that regardless of whether Petitioner was present for trial, the state bore the burden to prove its case beyond a reasonable doubt and that Petitioner did not have to prove his innocence, call any witnesses, or present any evidence. (*Id.* at 89) Moreover, the court of appeals noted that the trial court "struck every prospective juror who expressed any concern or doubt regarding Dyer's absence" and instructed the jury that Petitioner's absence was not evidence, and that they could not consider his absence in determining whether the state proved its case beyond a reasonable doubt. (*Id.*)

Petitioner contends that the trial court's explanations to the jury pool that Claimant would not be present at trial were impermissible comments on matters not in evidence that unavoidably prejudiced the jurors ultimately selected such that his rights to a fair trial and impartial jury must have been compromised. (Doc. 1 at 7) Petitioner concludes that under the circumstances, it was "overwhelmingly unlikely" that the jury could disregard unfavorable comments by potential jurors about Petitioner's absence. (Doc. 22 at 13)

Respondents argue that Petitioner does not allege the Arizona Court of Appeals' decision was contrary to clearly established federal law as determined by the United States Supreme Court. (Doc. 12 at 37) Respondents' arguments center on the existence of Supreme Court jurisprudence on the question of constitutionality of trying a defendant *in absentia*. (*Id.*) Petitioner's claim, however, is not that he was impermissibly tried *in absentia*, but rather whether statements made by some venirepersons in the jury pool tainted the jury ultimately selected, and whether the trial court's comments on his

absence prejudiced the jury. (Doc. 1 at 7) In his Reply, Petitioner argues his jury panel must have been prejudiced against him because a majority of the empaneled jurors "were present during voir dire when questions and comments about Dyer's absence were discussed." (Doc. 22 at 12) As Respondents note, Petitioner does not support his conclusion with any Supreme Court case law on point.

The United States Supreme Court has instructed that where a defendant contends that a specific seated juror was openly biased, a trial court's findings of juror impartiality "may be overturned [on appeal] only for manifest error." *Skilling v. United States*, 561 U.S. 358, 396 (2010). More generally, the Court concluded that jurors "need not enter the box with empty heads in order to determine the facts impartially." *Id.* at 398. Rather, the Court stated that "[i]t is sufficient if the juror[s] can lay aside [their] impression[s] or opinion[s] and render a verdict based on the evidence presented in court." *Id.* at 398-99 (quoting *Irvin v. Dowd,* 366 U.S. 717, 723 (1961)). Significantly, the Supreme Court has instructed that a "jury is presumed to follow its instructions[,]" and similarly "is presumed to understand a judge's answer to its question." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) and *Armstrong v. Toler*, 11 Wheat. 258, 279, 6 L.Ed. 468 (1826)).

Petitioner has not established that the adjudication of this claim by the Arizona Court of Appeals resulted in a decision contrary to Supreme Court jurisprudence or that it was based on an unreasonable determination of the facts.

**C.    Ground 2(b): Right to impartial jury and fair trial – prosecutor's comments**

In the claim Respondents addressed as Ground 2(b), Petitioner stated that his due process rights under the Sixth and Fourteenth Amendments to an impartial jury and fair trial were violated when the prosecutor asked a witness at trial whether he saw Petitioner in the courtroom, when the prosecutor knew Petitioner was not present. (Doc. 1 at 7) Petitioner argues this was another example of the prosecutor "pointing out matters not in evidence." (*Id.*) Respondents contend that Petitioner failed to raise this claim as a federal

constitutional claim, and that the claim was not fairly presented to the state courts. (Doc. 12 at 22-23)

In his opening brief to the Arizona Court of Appeals on direct appeal, Petitioner argued he was prejudiced by the trial court's statements regarding his absence from the courtroom. (Doc. 12-2 at 31-38) He also briefly noted that the prosecutor "compounded the problem" by asking Petitioner's father whether Petitioner was in the courtroom. (*Id.* at 34) Petitioner did not discuss the prosecutor's question in his reply. (Doc. 12-5 at 63-66) Petitioner did not raise the prosecutor's questioning as a separate due process violation with the state courts, but explains that he considered both the trial judge's comments on, and the prosecutor's question about, Petitioner's absence as "constitutional violations so intertwined as to result in a cumulative due process violation of his right to a fair and impartial jury and a fair trial." (Doc. 22 at 16) Based on this evidence, it is plain that that Petitioner did not fairly present a federal constitutional due process right violation to the Arizona state courts based solely on the prosecutor's question about Petitioner's absence at trial. This issue is therefore technically exhausted but procedurally defaulted.

Petitioner has not demonstrated that his default of this claim should be excused. He has not presented viable cause for his failure to present the federal basis for his claim in state court, and does not argue actual innocence or a fundamental miscarriage of justice to excuse the default. Although in his Reply, Petitioner attempts to assert *Martinez v. Ryan*, 566 U.S. 1 (2012) generally as authority to excuse his default by arguing that his counsel on direct appeal should have federalized his claim to preserve the issue for his federal habeas action (Doc. 22 at 16), this argument is without merit. *Martinez* holds that "inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. Petitioner cannot rely on *Martinez* to excuse Ground 2(b) of his Petition because the rule announced in *Martinez* is limited to underlying Sixth Amendment IAC claims, and Ground 5 asserts a claim of violation of his Fifth

Amendment due process rights by the trial court.

### D.   Ground 3: Prosecutorial misconduct

Petitioner alleges the prosecutor engaged in two instances of misconduct, violating his right to due process under the Fifth Amendment. (Doc. 1 at 8) First, he argues the prosecutor misstated testimony of witness G.S. by saying the testimony corroborated the victim's story. (*Id.*) Second, he contends the prosecutor made a statement on rebuttal that the burden of proof was on Petitioner, rather than on the state. (*Id.*)

The facts underlying Petitioner's first argument as stated by the Arizona Court of Appeals included:

> The prosecutor discussed the testimony of G.S. during her closing argument. When the prosecutor addressed G.S.'s testimony regarding the second time G.S. and the victim went to Dyer's home, the prosecutor stated, "[G.S.] remembers performing oral sex on Mr. Dyer or having Mr. Dyer perform it on him, but *he also remembers, he thinks, seeing Mr. Dyer perform oral sex on [the victim]*, which is what [the victim] said." Dyer argues the italicized portion of the statement misrepresented the testimony of G.S.

> The prosecutor's statement regarding what G.S. remembered was incorrect. G.S. testified he knew there was sexual contact between Dyer and the victim the second time G.S. and the victim went to Dyer's house. He testified he could *not* remember, however, if Dyer and the victim engaged in oral sex at that time. When asked if he had trouble remembering the types of sex that took place, G.S. answered he knew "there was oral sex and hand-to-genital touching," but he did not remember clearly of the types of sexual contact he, the victim and Dyer engaged in at Dyer's home occurred during the first or second visit to Dyer's home.

(Doc. 12-5 at 90)

Citing Arizona case law, the court of appeals noted that "[p]rosecutorial misconduct is not merely 'legal error, negligence, mistake or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial.'" (*Id.* at 91 (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108-09, 677 P.2d 261, 271-72 (Ariz. 1984)) The court further stated that alleged prosecutorial misconduct would not require reversal unless the prosecutor's actions denied the

defendant a fair trial. (*Id.*) The court agreed the prosecutor's statement that G.S. thought he remembered that Petitioner performed oral sex on G.S.'s and the victim's second visit to Petitioner's house was incorrect. (*Id.*) Because G.S. had remembered that Dyer performed oral sex on the victim, but could not remember whether it was the first or second visit, the court of appeals concluded it could not "say it was improper or misleading for the prosecutor to argue G.S.'s testimony supported the victim's testimony that Dyer performed oral sex on the victim the second time G.S. and the victim went to Dyer's home." (*Id.*) In addition, the court of appeals noted that the trial court instructed the jury that what the attorneys said in closing argument was not evidence, that it presumed jurors followed the court's jury instructions, and that the record contained no suggestion the jury did not follow jury instructions. (*Id.*)

Regarding Petitioner's claim that during her rebuttal in closing argument, the prosecutor committed misconduct by implying Petitioner bore the burden of proof, the court of appeals explained that, after addressing evidence pertinent to Petitioner's counsel's closing argument:

> The prosecutor then argued, "There is nothing more here that indicates that the defendant is innocent of these charges. I mean, there's nothing in any of this evidence that would show he is innocent. There's nothing that shows – you know, I mean, as – it's innocuous either way." Dyer claims these statements shifted the burden of proof.

(*Id.* at 91-92) The court of appeals found no error. (*Id.* at 92) The court rejected the argument that the prosecutor's statement shifted the burden of proof, and indicated that the statement did not draw attention to Petitioner's failure to testify or introduce evidence, did not suggest he had any duty to introduce evidence, and did not so much as hint that Petitioner bore any burden of proof. (*Id.*) The court further emphasized that final jury instructions repeatedly instructed the jury that:

> the State had the burden to prove every element of every offense beyond a reasonable doubt with its own evidence. The instructions further provided Dyer was not required to produce evidence of any kind, he was not required to prove he was innocent, and that his failure to produce evidence was not evidence of guilt.

(*Id.*)

Respondents contend that Petitioner did not support his arguments on this claim with any case law indicating the Arizona Court of Appeals' adjudication was contrary to or an unreasonable application of clearly established federal law. (Doc. 12 at 39) Respondents indicate that such clearly established federal law was announced by the United States Supreme Court in *Darden v. Wainwright*, 477 U.S. 168 (1986). In *Darden*, the Court explained that the test for constitutionality of allegedly improper statements by the prosecutor in closing argument is not whether the prosecutor's statements were, for example, "undesirable or even universally condemned," but rather, the "relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. at 180 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). The prosecutor's remarks in closing argument in *Darden* included referring to the defendant as an "animal," who should not be allowed out of his cell except on a leash, and that he wished he could see the defendant "sitting here with no face, blown away by a shotgun." *Id.* at 181-83, nn.11&12.

Following *Darden*, the Supreme Court decided a case alleging prosecutorial misconduct where in closing, the prosecutor suggested the defendant had colluded with his attorney and with a physician to "manufacture an extreme emotional disturbance defense[,]" but immediately following disavowed any suggestion of collusion. *Parker v. Matthews*, 567 U.S. 37, 45-46 (2012). In *Parker*, the Supreme Court characterized the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations[.]'" *Id.* at 48. Applying the *Darden* standard, the Ninth Circuit has found improper statements by a prosecutor in closing argument were neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law, or an unreasonable determination of the facts. In *Rowland v. Chappell*, the prosecutor argued to the effect that he would vote for the death penalty if he were on the jury. 876 F.3d 1174, 1188 (9th Cir. 2017) (finding the prosecutor's remarks improper, but that the remarks did not "undermine the fundamental fairness of

the trial."). In *Allen v. Woodford*, the Ninth Circuit applied the *Darden* standard and concluded that any misconduct was harmless. 395 F.3d 979, 1015-16 (9th Cir. 2005). Allegations of prosecutorial misconduct during closing argument in *Allen* included that the prosecutor: described the defendant as the mastermind behind numerous charged crimes, and then remarked, "[h]e is not listening to any of this, of course"; implied that defense counsel's questioning of witnesses was intended to obtain information that would be used later to identify and retaliate against the witnesses; compared the defendant to Adolf Hitler; engaged in emotional argument regarding the victims and the impacts to the victims' families; and argued the defendant was ultimately responsible for his actions and that the jury must follow the law. *Id.* at 1015-17.

The undersigned concludes that the Arizona Court of Appeals' decision on Petitioner's claims of prosecutorial misconduct plainly was a reasonable application of clearly established federal law as determined by the United States Supreme Court and was not based on an unreasonable determination of the facts.

### E.     Ground 4: Cruel and unusual punishment

Petitioner contends the sentence resulting from his conviction of 240 years of imprisonment represents unconstitutional cruel and unusual punishment in violation of the Eighth Amendment. (Doc. 1 at 9) Petitioner emphasizes that state statute requires his sentences on twelve counts to run consecutively, despite that: the charges involved a single victim who testified he was a willing participant; that Petitioner stated there was no violence or coercion; and that Petitioner had no criminal history. (*Id.*) He complains his charging document was intended to maximize his sentence, and that his sentence prejudiced him because he chose to go to trial rather than accepting a plea. (*Id.*) Further, Petitioner urges that the Arizona legislature, in enacting the requirement for mandatory consecutive sentencing, improperly usurped judicial and executive powers in violation of Article 3 of the Arizona Constitution. (*Id.*) Petitioner raised this claim with the Arizona Court of Appeals on direct appeal. (Doc. 12-2 at 55-67)

In its memorandum decision, the Arizona Court of Appeals described Petitioner's

sentences as follows:

> The twelve counts of sexual conduct with a minor constituted, as established by statue, dangerous crimes against children. *See* A.R.S. § 13-604.01(L)(1)(e) (2000). The applicable version of A.R.S. § 13-604.01(C) provides that a trial court shall sentence a defendant convicted of sexual conduct with a minor who is twelve, thirteen or fourteen years of age to a presumptive term of twenty years' imprisonment. The court may mitigate or aggravate the sentence by up to seven years. A.R.S. § 13-604.01(F) (2000). A.R.S. § 13-604.01(K) (2000) provides that a sentence for the commission of a dangerous crime against children must be served consecutively to any other sentence.

> The trial court sentenced Dyer to the presumptive term of twenty years' imprisonment for each count of sexual conduct with a minor. The mandatory consecutive terms resulted in an aggregate term of 20 years' imprisonment. Dyer argues his presumptive twenty-year sentences for sexual conduct with a minor, both individually and in the aggregate, constitute cruel and unusual punishment.

(Doc. 12-5 at 94-95)

Citing *State v. Berger*, 134 P.3d 378, 380 (Ariz. 2006), the court of appeals stated that a sentence that is "grossly disproportionate" to the crime would run afoul of the Eighth Amendment. (*Id.* at 95) The court held that a 20-year "sentence for sexual conduct with a minor who is twelve, thirteen or fourteen years of age is not grossly disproportionate to the crime[,]" and emphasized the "compelling" state interest in protecting the wellbeing of a minor. (*Id.* at 95-96) The court further stated that "'[i]f the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate.'" (*Id.* at 96, quoting *Berger*, 134 P.3d at 384) The court of appeals also compared the sentences Petitioner received to the sentence at issue in *Berger*, in which the Arizona Supreme Court held that "a ten-year minimum sentence for sexual exploitation of a minor based upon the mere possession of a single image of a child engaged in exploitive exhibition or other sexual conduct is not grossly

disproportionate to the crime." (*Id.*)[4] The court of appeals contrasted Petitioner's sentence with that in *State v. Davis*, where the Arizona Supreme Court found "a mandatory minimum sentence of fifty-two years' imprisonment for having voluntary sex with two post-pubescent girls violated the prohibitions against cruel and unusual punishment." (*Id.* at 96-97, citing *Davis*, 79 P.3d 64, 66 (2003)) The court underscored that the Arizona Supreme Court characterized *Davis* as an "'extremely rare case[,]'" and that Davis was 20 years old and had a "level of maturity and intelligence [that] was far below that of a normal adult[,]" unlike Petitioner. (*Id.* at 97) The court of appeals concluded that Petitioner's case was "in no way analogous to *Davis*." (*Id.*)

Petitioner "does not dispute" that a 20-year presumptive term for the crime of sexual conduct with a minor under the age of 15 "is not 'grossly disproportionate,' or that it furthers the goals of the Arizona penological system." (Doc. 22 at 24) Instead, Petitioner argues it is A.R.S. § 13- 604.01 (renumbered as A.R.S. § 13-705) "that makes [Petitioner's] sentence of 240 years without any possibility of early release 'grossly disproportionate.'" (*Id.*) Petitioner contends it is significant that his counts involved a single victim rather than many victims, and that his victim admitted the sexual conduct was consensual. (*Id.*) He also argues that Arizona statutes improperly provide prosecutors and police officers "de facto sentencing power" and the ability to "stack the deck by deciding how to frame and characterize the charges." (*Id.* at 27)

The Eighth Amendment analysis "focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *United States v. Aiello*, 864 F.2d 257, 265 (2nd Cir. 1988). As the Supreme Court has made clear, if the defendant

> has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses. It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life.

---

[4] In *Berger*, the defendant was convicted of 20 separate counts of sexual exploitation of a minor under the age of 15, based on the defendant's possession of child pornography, and he was sentenced to consecutive 10-year prison terms on each count, for a total sentence of 200 years' imprisonment. Berger, 134 P.3d at 379.

*O'Neil v. State of Vermont*, 144 U.S. 323, 331 (1892). Moreover, where the legislature explicitly provides for the punishment, there is no constitutional issue. The United States Supreme Court has held in several contexts that consecutive sentences do not pose a constitutional problem where the legislature has specifically provided for such sentences. *See Whalen v. United States*, 445 U.S. 684, 689 (1980) (noting that it is fully within the power of Congress to provide cumulative punishments, the only question was whether or not it had done so); *Gore v. United States*, 357 U.S. 386, 392 (1958) (holding that Congress clearly has the power to determine separate sentences for separate offenses); *Carter v. McClaughry*, 183 U.S. 365, 394 (1902) ("Cumulative sentences are not cumulative punishments, and a single sentence for several offenses, in excess of that prescribed for one offense, may be authorized by statute.").

In addition, there is no constitutional right to receive sentences concurrently. Rather, the "specification of the regime for administering multiple sentences has long been considered the prerogative of state legislatures." *Oregon v. Ice*, 555 U.S. 160 (2009). In Arizona, the legislature has mandated consecutive sentences for dangerous crimes against children. *See* A.R.S. § 13-705 (2018). In light of the legislature's determination, Petitioner's consecutive sentences are constitutional, and Petitioner fails to demonstrate that habeas relief should be granted based on the state courts' adjudication of this issue on the merits.

**F.      Ground 5: Disclosure of victim's medical and mental health records**

In Ground 5, Petitioner argues his right to due process under the Fifth Amendment was violated when the trial court

> [d]en[ied] a motion to compel disclosure of victim's medical and mental health records in camera. There was evidence that suggested the victim had mental conditions that could have led him to fabricate or fantazise the allegations against Petitioner, and the various medications he was taking could have interfered with his ability to perceive, recall, and testify about these allegations. Petitioner requested these records as necessary for impeachment, but also for formulation of defense themes.

(Doc. 1 at 10) Respondents argue that Petitioner did not fairly present this claim on federal law grounds to the state courts. (Doc. 12 at 23) They note that in Petitioner's

opening brief on direct appeal, he cited an Arizona Supreme Court case that had referenced a federal case from the Second Circuit Court of Appeals, but argue that this citation was to a principle applicable to discovery, not federal due process rights. (*Id.* at 23)

Petitioner did not fairly present a federal constitutional due process right violation to the Arizona state courts. In his opening brief to the Arizona Court of Appeals, Petitioner did not argue a violation of due process rights. (Doc. 12-2 at 25-31) In his reply brief to the court of appeals, Petitioner argued that he had a due process right to an *in camera* inspection of the victim's medical records, and that "due process" entitles a defendant to information that is exculpatory, essential to his theory of the case, or needed for impeachment of the victim. (Doc. 12-5 at 59-60, citing *State v. Sarullo*, 199 P.3d 686, 692 (Ariz. App. 2008) and *State ex rel. Romley v. Super. Ct. (Roper)*, 836 P.2d 445, 452 (Ariz. App. 1992)) Neither of the cited discussions in *Sarullo* nor *Roper* provides a basis to conclude that Petitioner expressly presented a federal due process claim to the Arizona courts. The United States Supreme Court requires that

> [i]f state courts are to be given the opportunity to correct alleged violation of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. at 365-66. Petitioner did not fairly present this claim to the Arizona Court of Appeals.

Petitioner has failed to demonstrate that default of this claim should be excused. He has not demonstrated cause for his failure to present the federal basis for his claim in state court, and does not argue actual innocence or a fundamental miscarriage of justice to excuse the default. Although in his Reply, Petitioner attempts to use *Martinez v. Ryan*, 566 U.S. 1 (2012) generally as authority, arguing his counsel on direct appeal should have federalized his claim and preserved the issue for his federal habeas action (Doc. 22 at 32), this argument lacks merit. *Martinez* holds that "inadequate assistance of counsel at

initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. Petitioner cannot rely on *Martinez* to excuse Ground 5 of his Petition because the rule announced in *Martinez* is limited to underlying Sixth Amendment IAC claims, and Ground 5 asserts a claim of violation of his Fifth Amendment due process rights by the trial court.

### G.      Ground 6: Ineffective assistance of counsel

Petitioner urges under Ground 6 that his trial counsel was ineffective and violated his Sixth Amendment rights because counsel failed: (1) to consult with him regarding a March 2001 plea offer, or to even advise him that such an offer had been made; (2) provide details to Petitioner regarding a subsequent plea offer from November or December 2001, other than to tell him that it was for 20 to 25 years' imprisonment; or (3) to object to the absence of a "*Donald* advisement" or a "*Donald* hearing" on the plea offers. (Doc. 1 at 11)

Respondents recognize that Petitioner attempted to present this claim to the Arizona Court of Appeals, but indicate that the court of appeals applied an "adequate and independent procedural bar to avoid considering the merits" of the claim, thereby rendering the claim expressly procedurally defaulted. (Doc. 12 at 25) Respondents further argue that Petitioner failed to allege and prove cause and prejudice for this default, or a fundamental miscarriage of justice. (*Id.* at 27-30)

Petitioner states that his reason for not filing a *pro per* PCR petition by the deadline provided by the Arizona Court of Appeals was that he "never received the PCR evidentiary hearing transcripts that were requested, which he needed in order to show that the superior court's decision to deny [him] relief was arrived at erroneously." (Doc. 22 at 35) Petitioner stated that after he did not receive the transcripts, he "assumed that there was nothing more he could do because he missed the filing deadline." (*Id.* at 36) Petitioner argues his advisory PCR counsel should have told him that he could file a motion to reconsider. (*Id.*)

As Respondents argue, Petitioner does not explain why he was unable to file a *pro*

*per* PCR petition without having first received the transcripts from the evidentiary hearing. (Doc. 12 at 28 (citing *Covell v. Ryan*, No. CV-11-992-PHX-DGC (BSB), 2012 WL 7149439 (D. Ariz. Oct. 15, 2012))) In *Covell*, the petitioner asserted he was denied transcripts from the PCR court and from appellate counsel, and that the PCR court had failed to rule on his motions for transcripts and a motion to continue the PCR proceedings until the State provided him with the transcripts. *Covell*, 2012 WL 7149439, at *7. Covell asserted this circumstance as cause for his failure to comply with the state's procedural rules, which led to default of his federal habeas claims. *Id.* at **6-7. This Court found that Covell had not established cause for his default. *Id.* at **7-8 (citing *United States v. Lewis*, 605 F.2d 379 (8th Cir. 1979) (prisoner does not have absolute right to transcripts for use in collaterally attacking sentence) and *Rodriguez v. Gonzales*, No. 1:09-cv-00748-OWW-DLB (HC), 2009 WL 2914151 (E.D. Cal. Sept. 9, 2009) (holding there is no entitlement to free copy of transcripts when seeking collateral review)). After finding that Covell had failed to establish why he was unable to file a petition for PCR, this Court noted that, subsequently, Covell still had not obtained the transcripts but was nevertheless able to file a section 2254 habeas petition. *Id.*

The circumstances of Petitioner's case are similar. Because Petitioner asserts that cause for his procedural default was the lack of copies of transcripts from his evidentiary hearing, but he fails to explain why that lack prevented him from timely filing his *pro se* PCR petition, and further fails to establish cause for his procedural default. A petitioner's status as an inmate, his lack of legal knowledge and assistance, and limited legal resources do not establish cause to excuse the procedural bar. *See Hughes v. Idaho State Bd. of Corr.,* 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause). Because Petitioner failed to establish cause, the Court need not address prejudice. *Hiivala*, 195 F.3d at 1105 n.6. Moreover, Petitioner does not argue the miscarriage of justice/actual innocence exception to procedural default applies,

and the undersigned discerns no basis in the record to assert this exception.

## IV.    CONCLUSION

For the reasons set forth above, the undersigned recommends the Court hold that: Petitioner's Grounds 1, 2(a), 3 and 4 fail on the merits; that Grounds 2(b) and 5 were not fairly presented to the state courts and were technically exhausted and procedurally defaulted without excuse; and that Ground 6 was procedurally defaulted without excuse.

Accordingly,

**IT IS RECOMMENDED** that Steven William Dyer's Petition for Writ of Habeas Corpus be **denied** and **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a federal constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an

/ / /

/ / /

/ / /

order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 26th day of June, 2018.

Honorable Deborah M. Fine
United States Magistrate Judge